Shaw, C. J.
This is an action of assumpsit, to recover a certain sum of money, on an alleged contract between the defendant and the plaintiff From the bill of exceptions, it appears that Frederick G. Ware, master of the bark Cleora, bound on a voyage to Mobile, employed Fogg the plaintiff, a shipping-agent, to engage and ship a crew for the vessel; and that a shipping-paper in usual form was prepared and signed by the master, whether before or after it was signed by the men, does not distinctly appear; but we consider it immaterial, because being prepared to be executed by both, when it is signed by both, it becomes the mutual contract of the parties, and it is unimportant which signs first. The plaintiff, as such shipping-agent, engaged one Herman Myers to go as cook and steward, at $20 a month, and in the column usually appropriated to the signature of the surety, against the name of Myers is found the name of Sinclair the defendant. Over this column is found this clause:—“ We who have subscribed our names in this column do promise that the man who has engaged for this present voyage, and signed his name in the third column of the same line, shall proceed on the said voyage agreeably to the shipping-papers, or refund the advance money with like amount, according to act of congress, to L. G. Fogg or order on demand.”
It further appears, that when the plaintiff shipped Myers, he paid the sum of $20 as the advance wages of Myers to the defendant Sinclair, to whom Myers was indebted for board, *480 in Myers’s presence, and that the defendant Sinclair then signed in the column before mentioned.
This is the evidence relied on as proof of a personal contract of the defendant with the plaintiff, to pay him double the amount of the money so advanced, in case Myers should not proceed on the voyage, agreeably to the shipping-papers. The question is, whether this stipulation constitutes a contract between the parties, upon which the plaintiff can maintain an action.
The contract between master and mariners is a contract required and regulated by law; its terms being specially prescribed, and many of them beneficial to the seamen, a class of men requiring the special protection of the law. It is made penal, for a master to carry out any seaman or mariner, without having made such a contract; from which it appears to follow, as a necessary conclusion, that no other contract, or contract containing other and distinct stipulations, or failing to contain the required stipulations, can be enforced by law.
The statute of the United States, passed July 20th, 1790, (1 U. S. St. at Large, 131,) under which such contract is required to be made, distinctly directs who shall be parties, namely, the master, the seaman, and his surety, or sureties, in case he shall have given surety to proceed on the voyage.
With this statute before us, printed on the back of the shipping-paper, in the usual form, showing that the parties intended to make a contract conformably to that act, and referring to it, the better to explain and illustrate their meaning, in the terms ol their contract, there being no other column or place for a surety to sign, the court are of opinion, that the words at the head of the column, under which the defendant signed, were a part of the contract between the master and mariner, and the promise therein, that the men shall go the voyage, or refund the advance-money, with a like amount, according to act of congress, was a promise made to the master by the defendant, as surety, as contemplated by the last clause in the second section of the act. If so, then on failure of the seaman to render himself on board and proceed on the voyage, the master may, by force of that section, maintain an action, *481 either against the seaman, or the defendant, as his surety, to recover double the amount of the advance wages, and a recovery by the plaintiff in this action would be no bar to such suit.
Again, regarding this as a separate and distinct contract between these parties, there was no consideration for it; for although the plaintiff may have paid the advance wages out of his own funds, yet acting merely as an agent, it must be regarded as the money of the principal, furnished to the agent for the purpose. The same payment, in fact, is treated in the contract as a payment by the master to the mariner, and constitutes the actual consideration for the contract entered into by the mariner and his surety with the master. And it would be an anomaly, if the same payment of a month’s advance could be considered as a consideration moving from the mere agent to the seaman and his surety, so as to support another separate and distinct contract with him. It would give two different parties a legal right to recover double the advance wages, upon shipping articles, made pursuant to the provisions of a law, which contemplates no such additional and collateral agreement with other parties, to be ingrafted on the plain, simple, and intelligible terms of the contract therein provided for.
It may be asked, why the name of Fogg, the agent, was inserted at the foot of the clause, providing that if the seaman should not proceed, &c., double the advance money should be refunded and paid to him. In the first place, if such a clause was inserted by. the broker or shipping agent for his own benefit, in more precise and explicit terms, it could not avail him, because contrary to the statute. The statute is made expressly to guard the seaman against being entangled in special engagements, to which his attention would not be likely to be called, and which he would not be likely to understand, especialy when introduced by those having an interest to make them.
But, in the present case, perhaps, a more satisfactory answer is this. The stipulation fails in some of the essential elements of a contract. The sendee is not to be done foi the *482 plaintiff, but for the principal. The consideration does not move from the plaintiff, but from his principal; the power to require or dispense with the performance is not with the agent, but with.the principal. Still the stipulation is, to refund the advance money, with like amount, according to act of congress, to Ludolph G. Fogg, on demand. We think this clause may have its rightful place and effect, by regarding' it as an authority, on the part of the master, to the agent, to receive the advance money and forfeiture due him, in case of a breach of the seaman’s undertaking.
It might be plausibly argued, that the authority of a shipping agent would ordinarily cease with the completion of his employment in shipping a man. The case supposes, that the vessel has sailed, and that the seaman and his surety are liable ; and it might be convenient to extend the authority of the agent to collect and give a good acquittance, in behalf of the master, but this would not lay the foundation of an action in his own name. No party can claim double the amount of the advance wages, in virtue of the shipping articles, except by force of the statute ; but the statute, in terms (§2), gives such action only to the master, owner, or consignee.
Considering the question, whether here was a contract to be enforced by the plaintiff, as a very important one, we have paid less attention to the other part of the case. But we consider it very questionable, whether here was such a violation of contract, on the part of the seaman, as would render the defendant liable on his contract, as surety, to anybody. The seaman did render himself on board at the time stipulated, but declined going the voyage, for reasons which he gave. If the master yielded to them, and permitted him to go on shore and give up the voyage, it would seem to be a discharge of the surety. It is stated in the bill of exceptions, as among the directions of the court, that the unwillingness of the man to go, or his sickness real or feigned, was not a sufficient reason for his leaving the vessel, or for the master to permit him to leave, Perhaps this might have been warranted by the particular circumstances of the case, but as a general proposition, in the unqualified terms stated, we think it cannot be sus *483 '.ained. Real sickness, of such a nature and severity, as to disable him from doing his duty, or to render the voyage dangerous to him, would not only excuse, but warrant and require the master to leave him. But, with these remarks, in case there should be an action brought by the master, we have not thought it necessary to consider this part of the case further; because, for the reasons abov,e stated, we are of opinion, that this action, by the plaintiff, cannot be maintained.

Exceptions sustained.